**HARTMANN DOHERTY ROSA BERMAN & BULBULIA**
Limited Liability Company    Attorneys At Law

433 Hackensack Avenue, Suite 1002
Hackensack, New Jersey 07601
t: 201.441.9056
f: 201.441.9435
www.hdrbb.com

New York Office
800 Third Avenue, 28th Floor
New York, New York 10022
t: 212.344.4619

Short Hills Office
830 Morris Turnpike, 3rd Floor
Short Hills, New Jersey 07078
t: 973.467.1325

Rockland Office
2 Executive Boulevard, Suite 300
Suffern, New York 10901-8219
t: 845.357.7900

January 20, 2021

**VIA ECF**

Hon. William J. Martini, U.S.D.J.
United States Courthouse
50 Walnut Street
Newark, New Jersey 07101

**DEFENDANT'S LETTER BRIEF
IN SUPPORT OF MOTION FOR
SPEEDY TRIAL OR DISMISSAL**

Re:   *USA v. Alice Chu*
      **Criminal No. 19-678-WJM**

Dear Judge Martini:

This firm is appointed counsel for Defendant Dr. Alice Chu. Please accept this letter in lieu of a more formal brief in support of Dr. Chu's Motion for a Speedy Trial or, alternatively, for Dismissal. Dr. Chu's professional and financial life has been destroyed by the Indictment in this case. She has gone from having a successful medical practice, in which she helped dozens of patients on a daily basis, to a state of personal destitution and despair. She cannot wait any longer for the criminal charges against her to be adjudicated at trial. Therefore, she moves for this case to proceed to trial on, or within 63 days, of the currently scheduled trial date or, alternatively, for a dismissal of the Indictment under the Speedy Trial Act.

## ARGUMENT

> In all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial, by an impartial jury of the State and district wherein the crime shall have been committed ....

*U.S. Const., amend. VI*

It appears that we are living in a world where the constitutional right to a speedy trial has been deemed "non-essential." Who would have guessed that a criminally accused's Sixth Amendment right not to be cast as a pariah for an indeterminate period of time would prove to be deemed less important than access to their local Home Depot? Yet, since March 16, 2020, this Court has issued and extended multiple Standing Orders continuing all criminal jury selection and

Hon. William J. Martini, U.S.D.J.
January 20, 2021
Page 2

jury trials until March 12, 2021. *See* Third Ext. Standing Order 2020-12 (filed 12/17/2020). Assuming that the circumstances giving rise to the prior general Orders to Continue will not change over the next several months, it is expected that the Court will enter additional general continuances, without the consent of criminal defendants, further delaying the resumption of jury trials.

"[T]he Speedy Trial Act [gives] effect to the Sixth Amendment's speedy trial guarantee by setting limits within which trials must begin." *United States v. Bailey-Snyder*, 923 F.3d 289, 295 (3rd Cir. 2019). Under the Speedy Trial Act, 18 U.S.C. § 3161 et seq., "the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." The Court may exclude certain periods "in computing the time within which the trial of any such offence must commence," including:

> Any period of delay resulting from a continuance granted by any judge on his own motion ..., if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A). The non-inclusive list of factors the Court must consider in determining whether to grant a continuance includes a single factor potentially relevant to the current circumstances: "Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of

justice." 18 U.S.C. § 3161(h)(7)(B)(i). "If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the ... indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2).

Here, Defendant's trial was long ago scheduled – by agreement of the parties and the Court – to commence on February 22, 2021. Defendant demands that trial go forward on, or within 63 days of, that date.[1] Although the Chief Judge's Standing COVID-19 Order – "determin[ing] that the ends of justice served by granting such a [COVID-19] continuance outweigh the best interest of the public and each defendant in a speedy indictment and a speedy trial in a criminal case" – purports to apply to all criminal cases in the District of New Jersey, the language of Section 3161(h)(7)(a), which refers to "defendant" in the singular, requires an individualized determination of whether the ends of justice warrant exclusion of time under the Speedy Trial Act in a particular case. *See United States v. Ramirez-Cortez*, 213 F.3d 1149, 1154 (9th Cir. 2000) (concluding that an ends of justice continuance was not sufficiently justified where the judge made no inquiry into the actual need for a continuance in the particular case, instead checked off boxes on pre-printed forms without making findings on the statutory factors, and the record showed that the judge "was granting blanket continuances"); *United States v. Sheikh*, __ F. Supp.3d __, 2020 WL 5995226, at *3 (E.D. Cal. Oct. 9, 2020) ("[T]he coronavirus alone does not give the court the liberty to simply exclude time. Rather, the court must conduct a "deliberate inquir[y] into whether an ends-of-justice continuance is justified by the circumstances surrounding a particular case."); *United States v.*

---

[1] Defendant was arrested on September 25, 2019, almost 1½ years ago. With the consent of the parties, the period from 10/22/2019 until 2/21/2021 was excluded under the Speedy Trial Act by Orders dated 10/22/2019 (Dkt. 10) and 6/23/2020 (Dkt. 25). The period from 3/16/2020 to 3/12/2021 has purportedly been excluded "Per Third Extension of Standing Order 2020-12," by Order filed 12/20/2020 (Dkt. 33).

Hon. William J. Martini, U.S.D.J.
January 20, 2021
Page 4

*Smith*, 460 F. Supp. 3d 981, 985 (E.D. Cal. 2020) ("Because section 3161(h)(7)(A) requires this balancing to be case-specific, the Court cannot find that considerations surrounding COVID-19's impact on public safety and this Court's operations will, in every case, outweigh the best interest of the defendant and the public in a speedy trial."). It also requires consideration of at least those factors listed in Section 3161(h)(7)(b). *Id.* The Court's Standing Order is itself inadequate and ineffective as to any particular criminal defendant.

On the one hand, Defendant seems unable to be afforded a speedy jury trial yet, on the other hand, there is no reason to believe that the government could not re-indict Defendant if there ever is a time when jury trials resume. Simply stated, the ends of justice do not justify the continued decimation of this particular defendant's life in order to continue this prosecution against her at a time when she is not being offered a jury trial, essentially for an indefinite period of time. Specifically, as set forth in the declaration submitted with this motion, Dr. Chu's professional and financial life have been ruined. She cannot survive being under indictment until some unknown date when COVID-19 is obliterated. She is destitute, clinically depressed, and grappling with suicidal ideations now. Indeed, U.S. Pretrial Services has repeatedly expressed to counsel their concern for Defendant's mental health and, specifically, their concern that the stress she is under will lead her to harm herself.[2] *See Moore v. Arizona*, 414 U.S. 25, 27 (1973) (per curiam) (recognizing that public accusation "'may disrupt [the defendant's] employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends,'" and holding that this form of prejudice must be considered in ascertaining whether there has been a speedy trial violation.") (internal citation omitted) (*cited in*

---

[2] Defendant has executed a release allowing Pretrial Services to consult with her psychiatrist and obtain her healthcare records.

*Gov't of Virgin Islands v. Pemberton*, 813 F.2d 626, 629 (3d Cir. 1987)). Defendant has charged counsel with obtaining for her an immediate jury trial so that she can put an end to this prosecution and begin the process of rebuilding her life. The Speedy Trial Act and the United States Constitution guarantee her at least that right.[3]

Although the Speedy Trial Act does not contain a particular extension for public emergencies, some courts have excluded *short* periods of time related to emergency conditions that resulted in widespread societal impact. *See, e.g.*, *United States v. Scott*, 245 F. App'x 391, 394 (5th Cir. 2007) (affirming 100-day ends-of-justice exclusions "related to various motions by [defense] counsel and the Hurricane Katrina-related continuance"); *Furlow v. United States*, 644 F.2d 764, 768 (9th Cir. 1981) (affirming 13-day ends-of-justice exclusion of time following volcanic eruption of Mount St. Helens, which interrupted all travel and communications in the area); *United States v. Correa*, 182 F. Supp. 2d 326, 329 (S.D.N.Y. 2001) (excluding 14 days under Speedy Trial Act in the interest of justice following September 11, 2001 terrorist attack, where "[t]he administration of justice in this District ground to a temporary halt as a result of acts of warfare against the United States that created a public emergency."). Here, however, the current emergency condition has been ongoing for approaching one year, with no end in sight; the current general continuance of all criminal jury trials is, in effect, indefinite. *See United States v. Jordan*, 915 F.2d 563, 565–66 (9th Cir. 1990) ("The Speedy Trial Act thus requires that an 'ends of justice' continuance be specifically limited in time and that there be findings supported by the record to justify each 'ends of justice' continuance. Otherwise one early 'ends of justice' continuance could exempt the entire case from the requirements of the Speedy Trial Act altogether, and open the door

---

[3] In this regard, Defendant is willing to waive her right to a public trial in order to minimize the health risks attendant to holding a jury trial at the present time.

Hon. William J. Martini, U.S.D.J.
January 20, 2021
Page 6

for wholly unnecessary delays in contravention of the Act's purpose."). Realistically, setting some wishful future trial date in this case, in the hope that jury trials will have then resumed, would be an exercise in futility:

> In all candor, this court believes that continuing the trial to April of 2021 would just amount to kicking the can down the road. Because of the closure of our courthouses, no civil or criminal cases have been tried in this district for the last six months. The cases that were on file before March of this year are still awaiting trial, and the United States Attorney continues to bring new indictments in the meantime. If the experience in other districts in any indication, when jury trials are finally resumed in this district they will be tried one at a time using our large ceremonial courtroom. When that time comes, some serious thought is going to have to be given, and some difficult decisions are going to have to be made, as to which of the cases in the mounting backlog will actually be tried and the order they will proceed to trial. Given the nature of the charges here and the fact that, unlike many of the others awaiting trial, this defendant is not in custody, the court doubts that this case will rank high on the government's list of cases to bring to trial.

*United States v. Sheikh*, __ F. Supp.3d __, 2020 WL 5995226, at *4 (E.D. Cal. Oct. 9, 2020). In *Sheikh*, the district court dismissed the indictment under the Speedy Trial Act for the same reasons presented here:

> Additionally, the court finds credible the defendant's claims of prejudice as a result of the delay in bringing this case to trial. While some of the prejudice defendant has pointed to is faced by just about every criminal defendant, defendant represents that she has not just suffered anxiety and embarrassment, but also depression, stress-induced physical effects such as body rashes and hives, and progression of her diabetes from moderate to severe. (Docket No. 145 at 14.)
>
> Defendant, a practicing physician in the Sacramento community, also claims that (1) since the inception of the case she has regularly received phone calls from blocked numbers telling her that she is a criminal, (2) she is "constantly slandered on social media," (3) friends and colleagues have distanced themselves from her due to the charges in this case, (4) the case has drained her financially and she has been forced to ask friends and family for money to pay her legal bills, and (5) the government has put lis pendens on her properties, preventing her from selling or refinancing the properties. (*Id.*)

Hon. William J. Martini, U.S.D.J.
January 20, 2021
Page 7

*Id.* As in *Sheikh*, "it would be a miscarriage of justice to require the defendant to continue to suffer through what she is experiencing for an additional six months" or, for all anyone knows, even longer. *Id.* at *5.

As the Supreme Court has recently recognized, "[e]ven if the Constitution has taken a holiday during this pandemic, it cannot become a sabbatical." *Roman Catholic Diocese of Brooklyn New York v Cuomo*, Docket No. 20A87, Slip Op. at 3 (Gorsuch, J., concurring) (Nov. 25, 2020). How long are the federal courts going to remain on sabbatical vis-à-vis the criminally accused? Even during the time period when the 7-day average caseload in New Jersey had fallen dramatically – from June to the beginning of October 2020 – the Court did not reinstate jury trials. Yet, it *is* possible to conduct jury trials; indeed, it is necessary. All that is required is the will to afford a criminal defendant a fundamental constitutional right and for jurors to appreciate its importance. Not all courts – state and federal – have been so timid:

> The Sixth Amendment guarantees the accused a speedy trial even when circumstances are challenging. The accused has that constitutional right even when a court is faced with a natural disaster, a terrorist attack and a pandemic. If it is possible for the court to conduct a jury trial, the court is constitutionally obligated to do so. There are no ifs or buts about it.
>
> Here, it is certainly possible to conduct a jury trial for Mr. Olsen in the federal courthouse in Orange County. Indeed, the grand jury is convening and returning indictments there and state courts across the street from there are successfully conducting jury trials. Contrary to the government's assertion, the pandemic does not allow this Court to deny Mr. Olsen his constitutional right to a speedy trial. Accordingly, the government's *ex parte* application to continue Mr. Olsen's trial scheduled for October 13, 2020 is **DENIED**. The Court herby requests the Chief Judge of the Central District of California to direct the Jury Department to summon jurors for the jury trial scheduled for that date.

*United States v. Olsen*, 467 F. Supp. 3d 892, 898 (C.D. Cal. 2020). *See also* "Courts Suspending Jury Trials as COVID-19 Cases Surge," U.S. Courts Judiciary News (11/20/2020) (reporting that

Hon. William J. Martini, U.S.D.J.
January 20, 2021
Page 8

"courts have safely conducted jury trials during the pandemic, and many of the nation's 94 districts are still scheduling jury trials," including, for example, the Northern District of Alabama, "which has held nine jury trials and we have had no issues, and no one has gotten sick," according to Chief Judge L. Scott Coogler, of the Northern District of Alabama) (*available at* https://www.uscourts.gov/news/2020/11/20/courts-suspending-jury-trials-covid-19-cases-surge). There is no stay-at-home order in effect in New Jersey, essential and non-essential businesses are open, highways and shopping malls are crowded, rush hour traffic has returned, and indoor dining (albeit at reduced capacities) is permitted.  Yet, despite the passage of almost one year since COVID-19's spread became apparent, with infection rates during that period having dropped precipitously for a period of time, the Court has not devised any procedures that would allow this, or any other, federal criminal defendant in this district, to enjoy their constitutional right to a speedy trial.  As a result, the United States District Court for the District of New Jersey appears to be unable, or at least unwilling, to fulfill that constitutional mandate.

It may be that the District of New Jersey is not willing to accept the risks attendant to providing a jury trial to even this single defendant under the current circumstances. *But see Roman Catholic Diocese of Brooklyn New York*, *supra*, Slip Op. at 5-6 ("In the end, I can only surmise that much of the answer lies in a particular judicial impulse to stay out of the way in times of crisis. But if that impulse may be understandable or even admirable in other circumstances, we may not shelter in place when the Constitution is under attack.  Things never go well when we do.") (Gorsuch, J., concurring). If so, the Speedy Trial Act affords a remedy in cases where a criminal defendant's right to a speedy trial cannot be accommodated.  That remedy is dismissal either with or without prejudice in the discretion of the Court.

Hon. William J. Martini, U.S.D.J.
January 20, 2021
Page 9

At least one Court has determined that dismissal with prejudice is warranted where jury trials are prevented because of a general order issued by a district's Chief Judge:

> Most important in this case are the facts and circumstances leading to dismissal. The Chief Judge of the Central District—supported by a majority vote of judges in the district—decided not to summon jurors for Mr. Olsen's trial. He made that decision knowing that holding a jury trial in Orange County was possible. He made that decision knowing that a grand jury was convening in the Orange County federal courthouse. He made that decision knowing that Orange County state courts were open for jury trials. And he made that decision knowing that Orange County non-essential businesses were open with appropriate modifications for safety. His decision was knowingly and willfully made. The primary factor driving the Chief Judge's decision was the risk that people might get sick from the coronavirus. (See Dkt. 68 at 1.) But his decision was made with little or no regard for Mr. Olsen's constitutional right to a public and speedy trial. Indeed, in his order denying the Court's request to summon jurors for Mr. Olsen's trial, the Chief Judge made no mention of the Constitution at all.
>
> The Central District's constitutional violation here also was not a mere technical one. See *Medina*, 524 F.3d at 987 (affirming dismissal without prejudice where district court found the violations of the Speedy Trial Act were "technical, rather than substantive"). Nor was it isolated and unwitting. *See United States v. Taylor*, 487 U.S. 326, 342, 108 S. Ct. 2413, 101 L.Ed.2d 297 (1988) (indicating that dismissal with prejudice is appropriate where there is "something more than an isolated unwitting violation"); *Medina*, 524 at 987 (explaining that a "culture of poor compliance" with the Speedy Trial Act would weigh in favor of dismissing with prejudice); *United States v. Ramirez*, 973 F.2d 36, 39 (1st Cir. 1992) ("The expansiveness of such a STA violation risk makes it important for a court to correct for the sake of deterrence and more painstaking vigilance."). Rather, it was a substantive policy decision to suspend the constitutional rights of Mr. Olsen and every other defendant unwilling to waive time. *See Taylor*, 487 U.S. at 339, 108 S. Ct. 2413 (finding that even "a truly neglectful attitude" toward the Speedy Trial Act could weigh in favor of dismissing with prejudice); *Medina*, 524 F.3d at 987; *Ramirez*, 973 F.2d at 39 (explaining that violations "caused by the court or the prosecutor" weigh in favor of granting a dismissal with prejudice).
>
> Finally, barring reprosecution in this case by dismissing with prejudice is the only sanction with enough teeth to create any hope of deterring additional delay in the resumption of jury trials and avoiding further dismissals of indictments for violations of defendants' constitutional rights to a public and speedy trial. *See Taylor*, 487 U.S. at 342, 108 S. Ct. 2413

> ("It is self-evident that dismissal with prejudice always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays."). A dismissal without prejudice, on the other hand, allows the government simply to go before the grand jury, obtain a new indictment, and proceed as if no constitutional violation ever occurred. *See* 18 U.S.C. § 3288 (permitting the government to obtain a new indictment within six calendar months of the date of the dismissal, "which new indictment shall not be barred by any statute of limitations"); *United States v. Bert*, 814 F.3d 70, 86 (2d Cir. 2016) ("The fact that the government must reindict the defendant is not a particularly strong deterrent."). In effect, there would be no adverse consequences from the Central District's knowing and willful decision to violate Mr. Olsen's constitutional right to a public and speedy trial. Such a meaningless result would "send exactly the wrong signal" and foster in the future "a cavalier regard, if not a concerted disregard" of the Constitution. *Ramirez*, 973 F.2d at 39; see Bert, 814 F.3d at 86 (encouraging courts to consider "the likelihood of repeated violations and whether there are potential administrative changes prompted by this violation"). This Court will not let that happen.
>
> V.
>
> *"The wisdom of our ages and the blood of our heroes has been devoted to the attainment of trial by jury. It should be the creed of our political faith."*
>
> –Thomas Jefferson
>
> The Central District denied Mr. Olsen his constitutional right to a public and speedy trial. It did so not because it was impossible to conduct the jury trial as is required by the Sixth Amendment. It did so because it was fearful people would get sick from the coronavirus. But no emergency or crisis, not even the coronavirus pandemic, should suspend the Sixth Amendment or any of our constitutional rights. The Constitution guarantees these rights to us during all times, good or bad. Because Mr. Olsen was denied his Sixth Amendment right to a public and speedy trial, this Court now must dismiss the charges against him, and that dismissal must be with prejudice. The Court's order dismissing the charges with prejudice will not take effect until October 28, 2020, when the time limit for commencing Mr. Olsen's trial will have expired.

*United States v. Olsen*, No. SACR 17-00076-CJC, 2020 WL 6145206, at *8–9 (C.D. Cal. Oct. 14, 2020). The same applies with equal force here.

Hon. William J. Martini, U.S.D.J.
January 20, 2021
Page 11

## **CONCLUSION**

      Defendant will be prejudiced and irreparably harmed by further delay of her jury trial. She does not consent to any further continuances and rejects the general continuance issued by the Chief Judge. For these reasons, in the event the Court is unable to proceed to trial on, or within 63 days of, February 22, 2021, a dismissal with prejudice is warranted.

      Respectfully submitted,

      Mark A. Berman

cc: All Counsel of Record (via ECF)