

FILED

JUL 23 2021

AT 8:30 ~~4:30~~ PM
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. William J. Martini |
| | : | |
| | : | Crim. No. 19-cr-678 (WJM) |
| v. | : | |
| | : | 18 U.S.C. § 1349 |
| | : | 18 U.S.C. § 1347 |
| ALICE CHU | : | 42 U.S.C. § 1320a-7b(b)(1)(B) |
| | : | 18 U.S.C. § 2 |

## SUPERSEDING INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

1. Unless otherwise indicated, at all times relevant to this Superseding Indictment:

### The Defendant

a. Defendant ALICE CHU was a medical doctor licensed to practice medicine in New Jersey and a resident of Fort Lee, New Jersey.

### Relevant Entity and Individual

b. Defendant ALICE CHU owned and controlled a rheumatology medical practice named New Life Rheumatology Center LLC. The practice had two locations: one in Clifton, New Jersey, and the other in Fort Lee, New Jersey.

c. Rosa Calvanico, a co-conspirator not charged in this Superseding Indictment, was a biller, manager, and medical assistant at New Life Rheumatology Center LLC.

**The Medicare Program**

d. The Medicare Program ("Medicare") was a federally funded health care program providing benefits to people 65 years of age or older, or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency within the U.S. Department of Health and Human Services ("HHS"). Individuals who received Medicare benefits were referred to as Medicare "beneficiaries."

e. Medicare was a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

f. Medicare was divided into four parts: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).

g. Physicians, companies, and other health care providers that provided items and services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all provisions of the Social Security Act, the regulations promulgated under the Social Security Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors. Providers were given and provided with

online access to Medicare manuals and service bulletins describing proper billing procedures, rules, and regulations.

   h. If Medicare approved a provider's application, Medicare assigned the provider a Medicare Provider Identification Number ("PIN"). A provider who was assigned a Medicare PIN and provided items or services to beneficiaries was able to submit claims for reimbursement to the Medicare contractor. Medicare payments were often made directly to the provider, rather than to the Medicare beneficiary. Payments occurred when the provider submitted a claim to Medicare for payment, either directly or through a billing company.

   i. A Medicare claim was required to set forth, among other things, the beneficiary's name, the date the items or services were provided, the beneficiary's diagnosis, the name of the physician or provider who ordered the items or services, and the name of the physician or provider who provided the items or services. Providers conveyed this information to Medicare by submitting claims using billing codes and modifiers.

   j. Medicare regulations required providers to maintain complete and accurate patient medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the physician. Medicare required complete and accurate patient medical records so that Medicare could verify that the services were provided as described in the claim form. These records were required to be

sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the health care provider.

  k. Physicians were allowed to bill Medicare for drugs that were (1) not usually self-administered, (2) furnished by the physician, and (3) administered by the physician, or by auxiliary personnel employed by the physician and under the physician's personal supervision. To bill Medicare for supplying a drug to a beneficiary, the physician was required to have incurred an expense in acquiring the drug.

  l. Medicare paid for claims only if the items or services were medically reasonable, medically necessary for the treatment or diagnosis of the patient's illness or injury, documented, and actually provided as represented to Medicare. Medicare would not pay for items or services that were procured through kickbacks and bribes.

## COUNT 1
## Conspiracy to Commit Health Care Fraud

  2. Paragraph 1 of this Superseding Indictment is re-alleged here.

  3. From in or around 2010, and continuing through in or around September 2019, in the District of New Jersey and elsewhere, the defendant,

ALICE CHU,

did knowingly and intentionally conspire and agree with Rosa Calvanico and others known and unknown, to knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs, as that term is defined under Title 18, United States Code, Section 24(b), and to obtain, by means of false and fraudulent pretenses, representations, and promises,

4

money and property owned by, and under the custody and control of, any health care benefit program in connection with the delivery of and payment for health care benefits, items, and services, contrary to Title 18, United States Code, Section 1347.

### Goal of the Conspiracy

4. It was the goal of the conspiracy for defendant ALICE CHU and her co-conspirators to unlawfully enrich themselves by, among other things, (a) submitting and causing the submission of false and fraudulent claims to Medicare and private insurance companies for items and services that were ordered or provided through illegal kickbacks and bribes, medically unnecessary, ineligible for reimbursement, and/or not provided as represented; (b) concealing the submission of false and fraudulent claims to Medicare and private insurance companies; (c) concealing the receipt and transfer of proceeds of the fraud; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendant and her co-conspirators.

### Manner and Means of the Conspiracy

5. The manner and means by which defendant ALICE CHU and her co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

    a. It was part of the conspiracy that defendant ALICE CHU applied for and maintained provider numbers for Medicare and private insurance companies associated with ALICE CHU personally and New Life Rheumatology Center LLC.

b. It was further part of the conspiracy that defendant ALICE CHU obtained and maintained a Medicare provider number by falsely certifying to Medicare that she would comply with all Medicare rules and regulations, including that she would not present or cause to be presented a false or fraudulent claim for payment by Medicare and that she would refrain from violating the federal anti-kickback statute.

c. It was further part of the conspiracy that defendant ALICE CHU and others solicited and received illegal kickbacks and bribes in exchange for ordering medically unnecessary testing and services, including but not limited to allergy testing, allergy immunotherapy treatment, and blood testing.

d. It was further part of the conspiracy that defendant ALICE CHU and others falsely diagnosed vulnerable patients, including the elderly and the disabled, with various diseases and conditions, including but not limited to rheumatoid arthritis, in order to increase revenue for defendant ALICE CHU and others.

e. It was further part of the conspiracy that defendant ALICE CHU and others administered and caused the administration of allergy testing and allergy immunotherapy treatment to patients that were medically unnecessary, ineligible for reimbursement, and/or not provided as represented.

f. It was further part of the conspiracy that defendant ALICE CHU and others directed unqualified individuals, who were not licensed or certified to provide professional health care services in New Jersey, to create and administer allergy immunotherapy treatment.

g. It was further part of the conspiracy that defendant ALICE CHU and others knowingly and intentionally caused a laboratory company to submit false and fraudulent claims for reimbursement to Medicare and private insurance companies by ordering laboratory blood tests, including for patients who were falsely diagnosed as having rheumatoid arthritis, that were medically unnecessary, ineligible for reimbursement, and/or not provided as represented.

h. It was further part of the conspiracy that defendant ALICE CHU, Rosa Calvanico, and others submitted and caused the submission of false and fraudulent claims that misrepresented the amount of time spent with a patient, the complexity of the visit with the patient, and the identity of the health care provider who actually rendered the service to the patient, all to increase the reimbursement from Medicare and private insurance companies.

i. It was further part of the conspiracy that defendant ALICE CHU, Rosa Calvanico, and others submitted and caused the submission of false and fraudulent claims to Medicare and private insurance companies for supplying expensive drugs used to treat autoimmune diseases, without having incurred an expense in acquiring these drugs.

j. It was further part of the conspiracy that defendant ALICE CHU, Rosa Calvanico, and others falsified, fabricated, altered, and caused the falsification, fabrication, and alteration of records, including patient medical files, laboratory testing orders, and documents provided in response to records requests, all to support claims for office visits, allergy testing and allergy immunotherapy treatment, injections, laboratory blood tests, and other items

and services that were ordered or provided through illegal kickbacks and bribes, medically unnecessary, ineligible for reimbursement, and/or not provided as represented.

k. It was further part of the conspiracy that defendant ALICE CHU, Rosa Calvanico, and others submitted and caused the submission of false and fraudulent claims to Medicare and private insurance companies in an amount in excess of approximately $10.4 million for items and services that were medically unnecessary, ineligible for reimbursement, and/or not provided as represented.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2 – 6
### Health Care Fraud

6. Paragraph 1 of this Superseding Indictment is realleged here.

7. From in or around 2010, and continuing through in or around September 2019, in the District of New Jersey and elsewhere, the defendant,

ALICE CHU,

in connection with the delivery of, and payment for, health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare, a health care benefit program as defined in 18 U.S.C. § 24(b), and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare, by submitting or causing the submission of false and fraudulent claims for items and services, including office visits, allergy testing and allergy immunotherapy treatment, laboratory blood

8

tests, and expensive drugs used to treat autoimmune diseases, that were ordered or provided through illegal kickbacks and bribes, medically unnecessary, ineligible for reimbursement, and/or not provided as represented.

### Goal of the Scheme and Artifice

8. The Grand Jury realleges Paragraph 4 of this Superseding Indictment as a description of the goal of the scheme and artifice.

### The Scheme and Artifice

9. The Grand Jury realleges Paragraph 5 of this Superseding Indictment as a description of the scheme and artifice.

### Executions of the Scheme and Artifice

10. On or about the dates specified below, in the District of New Jersey, and elsewhere, defendant ALICE CHU, aided and abetted by others, and aiding and abetting others known and unknown to the Grand Jury, submitted or caused to be submitted the following false and fraudulent claims to Medicare for allergy immunotherapy treatment that was ordered or provided through illegal kickbacks and bribes, medically unnecessary, not eligible for reimbursement, not provided as represented, and/or never provided, in an attempt to execute, and in execution of the scheme as described in Paragraph 5, with each execution set forth below forming a separate count:

| Count | Medicare Beneficiary | Approximate Date of Claim | Approximate Amount Billed to Medicare | Approximate Amount Paid by Medicare |
|---|---|---|---|---|
| 2 | A.D. | 10/17/2016 | $450.00 | $292.04 |
| 3 | B.B. | 12/7/2016 | $450.00 | $292.04 |
| 4 | D.H. | 2/21/2017 | $450.00 | $300.27 |

11.     On or about the dates specified below, in the District of New Jersey, and elsewhere, defendant ALICE CHU, aided and abetted by others, and aiding and abetting others known and unknown to the Grand Jury, submitted or caused to be submitted the following false and fraudulent claims to Medicare for supplying expensive drugs used to treat autoimmune diseases, without having incurred an expense in acquiring these drugs, in an attempt to execute, and in execution of the scheme as described in Paragraph 5, with each execution set forth below forming a separate count:

| Count | Medicare Beneficiary | Approximate Date of Claim | Approximate Amount Billed to Medicare | Approximate Amount Paid by Medicare |
|---|---|---|---|---|
| 5 | J.L. | 12/11/2017 | $11,000 | $6,651.51 |
| 6 | A.B. | 3/27/2018 | $11,000 | $6,882.21 |

Each in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS 7 – 8
### Receipt of Health Care Kickbacks

12.     Paragraphs 1, 4, and 5 of this Superseding Indictment are realleged here.

13.     On or about the approximate dates set forth below, in the District of New Jersey and elsewhere, the defendant,

ALICE CHU,

did knowingly and willfully solicit and receive remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering any good, facility, service, and

item for which payment may be made in whole and in part by a Federal health care program, as set forth below:

| Count | Approximate Date | Check No. | Receiving Account | Approximate Amount |
|---|---|---|---|---|
| 7 | 3/16/2017 | 206438 | x4507 | $2,070 |
| 8 | 11/7/2018 | 220916 | x3068 | $12,570 |

Each in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(B) and Title 18, United States Code, Section 2.

**FORFEITURE ALLEGATIONS
18 U.S.C. § 982(a)(7)**

1.  The allegations contained in Counts 1 through 8 of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture against the defendant, ALICE CHU.

2.  Pursuant to Title 18, United States Code, Section 982(a)(7), upon being convicted of the crimes charged in Counts 1 through 8 of this Superseding Indictment, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

**Substitute Assets Provision**

3.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third person;

  c. has been placed beyond the jurisdiction of the Court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of defendant ALICE CHU up to the value of the forfeitable property described above.



_____
RACHAEL A. HONIG
Acting United States Attorney

JOSEPH S. BEEMSTERBOER
Acting Chief
Criminal Division, Fraud Section

TIMOTHY DUREE
Assistant Chief
Criminal Division, Fraud Section

_____
REBECCA YUAN
NICHOLAS PEONE
Trial Attorneys
Criminal Division, Fraud Section

CASE NUMBER: 19-cr-678 (WJM)

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

v.

ALICE CHU

# SUPERSEDING INDICTMENT FOR

18 U.S.C. §§ 1349, 1347, 2
42 U.S.C. §§ 1320a-7b(b)(1)(B)



RACHAEL A. HONIG
ACTING UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

REBECCA YUAN AND NICHOLAS PEONE
TRIAL ATTORNEYS
(202) 262-3520