## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **United States of America** | |
| v. | Criminal No.: 19-cr-0678-WJM |
| **Alice Chu** | OPINION |

### WILLIAM J. MARTINI, U.S.D.J.:

This matter comes before the Court on defendant Alice Chu's ("Defendant") motion (the "Motion") to dismiss the superseding indictment pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure. *See* ECF No. 55. For the reasons set forth below, Defendant's Motion is **DENIED**.

### I.    BACKGROUND

On September 24, 2019, a federal grand jury returned a five-count indictment (the "Indictment") against Defendant charging her with one count of conspiracy to commit health care fraud (Count 1) and four counts of health care fraud (Counts 2-5). Indictment, ECF No. 1. The Indictment alleged, among other things, that Defendant defrauded Medicare and private insurance companies by submitting over $8.8 million in false and fraudulent claims for "items and services that were medically unnecessary, ineligible for reimbursement, and/or not provided as represented." *Id.* at ¶ 5(j).

Since the return of the initial Indictment, this case has been subject to a series of continuance orders delaying trial and excluding time under the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.* First, with the consent of the parties, the Court ordered a continuance and exclusion of time from October 22, 2019 through March 12, 2020, finding that the failure to grant such a continuance would deprive the parties of the time necessary to effectively prepare for trial. Order for Continuance, ECF No. 10. Second, on June 23, 2020, again with consent of the parties, the Court entered a further continuance order excluding the period from March 12, 2020 through February 22, 2021 for Speedy Trial Act purposes. Order for Continuance, ECF No. 25. Separate from these case-specific continuance orders, as a result of the risks and challenges caused by the COVID-19 pandemic, from March 16, 2020 through June 1, 2021, all trials, including criminal jury trials, in this District were suspended and subject to a series of standing continuance orders and exclusions of time under the Speedy Trial Act.[1]

---

[1] Prior to the expiration of the various continuance orders, Defendant made multiple attempts to assert her right to a speedy trial. *See* Motion for Speedy Trial or Dismissal (Jan. 20, 2021), ECF

On June 3, 2021, the Court held a status conference with the parties to discuss a scheduling order and potential trial dates, following which the Court scheduled trial to begin on July 7, 2021. However, although jury trials had resumed in the District, there remained certain health and safety restrictions designed to mitigate the risk of COVID-19, including, for example, limitations on the number of concurrent jury selections and trials. With these restrictions in mind, the Court advised the parties later that same day that the July 7, 2021 date would not be practicable and that the trial would instead begin on October 12, 2021. To that end, the Court entered a scheduling order and a continuance order setting forth applicable deadlines and excluding time under the Speedy Trial Act, respectively. *See* Scheduling Order (June 7, 2021), ECF No. 46; Order to Continue (June 7, 2021), ECF No. 45.

On June 21, 2021, Defendant filed a motion for reconsideration of the Court's scheduling order establishing an October 12, 2021 trial date. Motion for Reconsideration (June 21, 2021), ECF No. 47. On June 23, 2021, in an effort to accommodate Defendant's desire for an earlier trial, the Court set a new trial date for August 3, 2021. However, on June 25, 2021, the Government informed the Court that, prior to the change in trial date from October 12, 2021 to August 3, 2021, it had requested to present a superseding indictment against Defendant to a grand jury on July 23, 2021.

Upon the Court's instruction, the Government filed a letter under seal explaining the basis for the superseding indictment. In its response, the Government stated, among other things, that the investigation into Defendant continued after the original Indictment was returned and remained ongoing, that this investigation revealed additional health care benefit programs that were allegedly defrauded by Defendant and additional patients whose personal information was used to submit allegedly false and fraudulent claims to Medicare and private insurance companies. Gov't Response at ¶¶ 1-3. (July 1, 2021), ECF No. 50. The Government further stated that, since the June 3, 2021 status conference, it had "made diligent efforts to contact witnesses in preparation for trial," but that certain material witnesses could not be located." *Id.* at ¶ 4. The Government also affirmed its intention to present a superseding indictment which would "(1) remov[e] and/or replac[e] Medicare beneficiaries named in the original Indictment who may be unavailable for trial; (2) amen[d] charges based on the evidence expected to be available on the date of trial in light of witness interviews, witness availability, and new documentary evidence; and (3) charg[e] the case consistent with the identity of additional health care benefit program victims." *Id.* at ¶ 5. Despite these changes, the Government maintained that the superseding indictment would not "significantly alter the state of discovery" because relevant discovery materials had been produced to Defendant on an ongoing basis. *Id.* at 6. In light of the Government's response, the Court again adjourned Defendant's trial to October 12, 2021.

---

No. 34; Motion for Reconsideration of Standing Order 2021-04 (Mar. 22, 2021), ECF No. 40. Both of Defendant's motions were denied by the Court.

On July 23, 2021, a superseding indictment (the "Superseding Indictment") was returned by the grand jury against Defendant. Superseding Indictment, ECF No. 54. The Superseding Indictment features several notable changes from the original Indictment. First, Count 1 of the Superseding Indictment for conspiracy to commit health care fraud alleges that Defendant submitted or caused the submission of false and fraudulent claims to Medicare and private insurance companies in excess of $10.4 million, rather than the $8.8 million alleged in the original Indictment.

Second, the Superseding Indictment includes five substantive counts of health care fraud, Counts 2 through 6, many of which are different than the four substantive counts of health care fraud alleged in Counts 2 through 5 of the original Indictment. For example, with respect to charges of health care fraud related to the submission of allegedly false or fraudulent claims for allergy immunotherapy treatment, the Superseding Indictment dropped counts arising out of treatment for Medicare beneficiaries "B.B." and "E.C." that were included in Counts 3 and 4 of the original Indictment, respectively, and added a new count arising out of treatment for Medicare beneficiary "D.H." in its new Count 4. In addition, the Superseding Indictment alleges two new counts, Counts 5 and 6, for health care fraud arising out of the submission of allegedly false and fraudulent claims to Medicare for drugs used to treat autoimmune diseases for Medicare beneficiaries "J.L." and "A.B." which were acquired by Defendant without incurring any actual expense. Superseding Indictment, at ¶ 11. Finally, the Superseding Indictment includes two new counts, Counts 7 and 8, for receipt of health care kickbacks. *Id.* at ¶¶ 12-13.

On August 20, 2021, Defendant filed the instant Motion, seeking disclosure of the grand jury materials and dismissal of the Superseding Indictment. The Government has opposed Defendant's Motion and argues that its use of the grand jury was proper and did not result in any intentional or prejudicial delay of Defendant's trial.

Following the filing of Defendant's Motion, on September 14, 2021, Defendant's counsel informed the Court that he had a scheduling conflict due to another trial beginning on September 25, 2021 and would therefore be unable to go forward with the October 12, 2021 trial date. On November 8, 2021, the Court held a status conference with the parties and set January 12, 2022 as the new trial date.

## II.   DISCUSSION

Defendant seeks dismissal of the Superseding Indictment, arguing that the Government impermissibly used the grand jury to gather additional evidence and secure witnesses prior to Defendant's trial, and to frustrate Defendant's right to a speedy trial. Defendant seeks disclosure of (1) a transcript of the grand jury proceedings; (2) copies of all grand jury subpoenas issued; and (3) all documents received by the Government post-Indictment, as well as a review of the Government's internal communications to determine the reason behind the timing of the Superseding Indictment, and an evidentiary hearing to decide whether the grand jury was used to defeat Defendant's right to a speedy trial. The Court disagrees and will deny Defendant's requests.

### A. Dismissal of the Superseding Indictment

Defendant argues that dismissal of the Superseding Indictment is warranted because the Government used the grand jury either to gather additional evidence against Defendant or to intentionally frustrate Defendant's right to a speedy trial. The Court addresses each claim in turn.

### 1. Use of Grand Jury to Gather Evidence

Once an individual has been indicted, "a prosecutor may not use a grand jury's investigative powers for the purpose of securing additional evidence against the defendant for use in the upcoming trial." *In re Grand Jury Proceedings*, 632 F.2d 1033, 1041 (3d Cir. 1980) ("Johanson"). "For example, the [G]overnment may not use the grand jury to improve its case in an already pending trial by preserving witness statements, locking in a witness's testimony, pressuring potential trial witnesses to testify favorably, or otherwise employing the grand jury for pretrial discovery." *United States v. Alvarado*, 840 F.3d 184, 189 (4th Cir. 2016). A grand jury, however, is not precluded from continuing its investigation "into other charges within the scope of [its] lawful authority . . . even if it uncovers further evidence against an indicted person." *Johanson*, 632 F.2d at 1041; *see also United States v. Dise*, 763 F.2d 586, 593 (3d Cir. 1985) (affirming denial of motion to dismiss superseding indictment which added two new counts to initial indictment because "[t]he grand jury was free to inquire into other charges"). Although "there is a fine line between an improper 'trial preparation' use of a grand jury and a proper 'continuing investigation' use," *United States v. Flemmi*, 245 F.3d 24, 28 (1st Cir. 2001), "the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *United States v. R. Enters.*, 498 U.S. 292, 300 (1991). In other words, "in the absence of a contrary factual showing, the grand jury proceedings are entitled to a presumption of lawfulness and regularity." *Johanson*, 632 F.2d at 1041. To defeat this presumption, Defendant bears the heavy burden of demonstrating "that the sole or dominant purpose of seeking the evidence post indictment is to prepare for the pending trial." *Id.*

Defendant has not met her burden of demonstrating that the sole or dominant purpose of the Government's use of the grand jury was to gather evidence to use against Defendant at her upcoming trial. Where, as here, a grand jury returns a superseding indictment with new charges and substantive changes from the original indictment, it is strong evidence that the grand jury acted within its lawful authority and was convened for a proper purpose. *See Alvarado*, 840 F.3d at 190 (noting presumption of regularity is "further strengthened where . . . a grand jury returns new indictments with additional charges or defendants"); *see also Flemmi*, 245 F.3d at 28 (noting presumption of regularity persists "when the grand jury's investigation leads to the filing of additional charges against previously indicted defendants"); *United States v. Jones*, 129 F.3d 718, 723 (2d Cir. 1997) ("Post-indictment action is permitted to identify or investigate other individuals involved in criminal schemes or to prepare superseding indictments against persons already charged." (citations omitted)).  Here, as noted, the Superseding Indictment makes a number

4

of substantive changes to the charges against Defendant alleged in the original Indictment, including a $1.6 million increase in the total of allegedly false claims submitted to Medicare and private insurance companies, one new count of health care fraud in connection with claims submitted to Medicare for allergy immunotherapy treatment, two new claims of health care fraud in connection with claims submitted to Medicare for expensive drugs used to treat autoimmune diseases which Defendant had not incurred any expense in acquiring (a scheme that was not alleged in the original Indictment), and two new counts in connection with the receipt of health care kickbacks. Defendant has not demonstrated that these additional charges were the result of anything other than "a good faith investigation of those charges" *Dise*, 763 F.2d at 593. Thus, these substantial changes and new charges indicate that the Superseding Indictment was the product of evidence uncovered during the Government's continuing investigation into Defendant rather than a misuse of the grand jury to prepare for trial on the existing charges in the original Indictment.

The only evidence Defendant points towards to support her contention that the grand jury was used to improperly gather evidence for trial is the late timing of the Superseding Indictment and the Government's statement in its July 1, 2021 letter that it could not locate certain witnesses it had anticipated calling at trial. Such evidence is insufficient to rebut the presumption of regularity of the grand jury proceedings. First, "[a] superseding indictment may be obtained by the government at any time prior to trial." *United States v. Fisher*, 871 F.2d 444, 452 n.7 (3d Cir. 1989). Moreover, that the Government may have been able to present the Superseding Indictment earlier does not, as Defendant argues, support an inference that the grand jury process was abused or that the Government could not get ready for trial. *See United States v. Rinaldi*, No. 3:18-CR-279, 2020 WL 4318757, at *10 (M.D. Pa. July 27, 2020) ("[T]he mere fact that the Government may have been able to bring the First Superseding Indictment at an earlier time . . . is insufficient to establish pre-indictment delay and a violation of Defendant's Due Process rights."); *United States v. McLaughlin*, 910 F. Supp. 1054, 1062-63 (E.D. Pa. 1995) ("The mere fact that the government was aware of the evidence before the grand jury returned the superseding indictment does not establish that the government violated the defendants' rights to due process.").

Nor does the substitution of Medicare beneficiary victims for whom false claims were allegedly submitted serve as evidence that the Government impermissibly "used the grand jury to gather evidence regarding [such] available victims" as Defendant suggests. Mot. at ¶ 29. Such "conclusory [and] speculative allegations about what went on in a grand jury proceeding give no cause to question the regularity of the grand jury's functioning." *United States v. Giampa*, 904 F. Supp. 235, 288 (D.N.J. 1995). Indeed, even if the grand jury proceedings produced additional evidence against Defendant on the existing charges, dismissal would only be warranted if the uncovering of such evidence were the "sole or dominant purpose" of the grand jury's investigation. Where, however, the grand jury uncovers such additional evidence in the course of a legitimate investigation which resulted in the filing of new substantive charges against Defendant, there is no basis on which the

Court can conclude that the "sole or dominant purpose" of the Government's use of the grand jury was improper. *McLaughlin*, 910 F. Supp. at 1063; *see also Johanson*, 632 F.2d at 1041 ("[A] good faith inquiry into other charges within the scope of the grand jury's lawful authority is not prohibited even if it uncovers further evidence against an indicted person.").

The Court finds that the Government did not use the grand jury for the sole or dominant purpose of gathering additional evidence against Defendant or to prepare for trial. Accordingly, dismissal of the Superseding Indictment for abuse of the grand jury is unwarranted and Defendant's Motion is denied.

### 2. Use of the Grand Jury to Unduly Delay Trial

Defendant argues that the only reasonable inference that can be drawn from the timing of the Superseding Indictment is that the Government has sought to unreasonably delay trial and frustrate her right to a speedy trial. The Court disagrees.

Pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure, the Court may dismiss an indictment if there is an unnecessary delay in presenting a charge to a grand jury or bringing a defendant to trial. Fed. R. Crim. P. 48(b). Rule 48 thus permits the Court to dismiss an indictment where there is "unreasonable or unnecessary delays on the part of the government." *United States v. Hassan-Gouda*, Crim. A. No. 07-258 (JBS), 2013 WL 1501695, at *5 (D.N.J. Apr. 8, 2013). The Court's discretion to dismiss an indictment under Rule 48, however, "is constrained by long-standing authority holding that a superseding indictment may be filed any time before trial on the merits." *United States v. Trahan*, 333 F. App'x 818, 819 (5th Cir. 2009). Moreover, dismissal of an indictment is an "extreme sanction," and will only be warranted due to pre-indictment delay by the Government if Defendant can show both "(1) "that the delay between the crime and the federal indictment actually prejudiced [her] defense; and (2) that the government deliberately delaying bringing the indictment in order to obtain an improper tactical advantage or to harass [her]." *United States v. Beckett*, 208 F.3d 140, 150-51 (3d Cir. 2000).[2]

---

[2] *Beckett* concerned a defendant's motion to dismiss an indictment for pre-indictment delay under the Due Process Clause of the Fifth Amendment. The Third Circuit has not ruled on whether this same test applies to pre-indictment delays challenged under Rule 48 of the Federal Rules of Criminal Procedure, though at least one other court in this circuit has analyzed these arguments together under the *Beckett* test. *See United States v. Arakelyan*, Crim. A. No. 06-226-04, 2008 WL 1849126, at *3 (E.D. Pa. Apr. 25, 2008) (noting that the factors considered with respect to a motion to dismiss a superseding indictment for unreasonable delay under the Due Process Clause and Rule 48(b)(1) are "similar"). The Court finds that the *Beckett* test is the appropriate inquiry for analyzing motions to dismiss an indictment for pre-indictment delay (including delays in filing a superseding indictment) under Rule 48. Although Defendant's argument rests primarily on the frustration of her speedy trial rights, pre-indictment delays do not themselves implicate speedy trial interests under the Sixth Amendment, *see United States v. Sebetich*, 776 F.2d 412, 429 (3d Cir. 1985), and any potential interference with those rights caused by such a delay may be appropriately accounted for in analyzing any actual prejudice under the first *Beckett* prong.

Here, Defendant has failed to satisfy either prong. First, although Defendant has repeatedly invoked her speedy trial rights over the past year, which prompted the Court to attempt to accommodate her request by moving up the trial date from October 12, 2021 to August 3, 2021, Defendant has not demonstrated how the delay of 10 weeks actually prejudiced her defense. Indeed, as the Government points out, Defendant's own expert report was not obtained until August 19, 2021, and it would therefore seem that Defendant benefited from the delay rather than suffered any prejudice. Moreover, the Government maintains, and Defendant does not seriously dispute, that Defendant was aware of the ongoing nature of the Government's investigation, that it has produced evidence relevant to the revised or additional charges in the Superseding Indictment, and that the Superseding Indictment did not substantially alter the state of discovery or otherwise impede the ability to mount a defense. *See Rinaldi*, 2020 WL 4318757, at *9. Lastly, although Defendant's "anxiety and concern" while awaiting trial is an obvious, and real, prejudice exacerbated by any delay in her trial date, *see Barker v. Wingo*, 407 U.S. 514, 532 (1972), the Court cannot conclude that any such prejudice arising out of the two-month delay caused by the filing of the Superseding Indictment, standing alone, is sufficient to warrant dismissal.[3]

Second, even assuming Defendant were prejudiced by the filing of the Superseding Indictment and the subsequent rescheduling of her trial, she has not shown that the timing of the Superseding Indictment was motivated by a desire to gain some tactical advantage over her or harass her in some way. The Government has stated on the record numerous times that the decision to seek the Superseding Indictment was made after the Court scheduled trial to begin on October 12, 2021, but before the Court attempted to move the trial up to August 3, 2021. That the Government could have presented the Superseding Indictment sooner does not, without more, support an inference that it was intentionally seeking to frustrate Defendant's right to a speedy trial or secure some sort of litigation advantage.

Accordingly, the Court finds that the Government did not unreasonably or unnecessarily delay in filing the Superseding Indictment such that dismissal is warranted under Rule 48.

### B. Disclosure of Grand Jury Materials

Defendant argues that, even if the current record does not support dismissal of the Superseding Indictment at this time, her claim of grand jury abuse and intentional delay by

---

[3] As noted, the ultimate delay of Defendant's trial from August 3, 2021 has turned out to be substantially longer than the 10 weeks between that date and October 12, 2021, the date on which Defendant's trial was subsequently scheduled to begin. The additional delay, however, was not the result of the Government's conduct, but the availability of defense counsel that was not brought to the Court's attention until September 14, 2021. As such, the Court will not hold any prejudice suffered by Defendant for the delay following the scheduled October 12, 2021 trial date against the Government in ruling on Defendant's Motion.

7

the Government ultimately cannot be properly vetted until the Court conducts an evidentiary hearing and reviews the grand jury materials. The Court disagrees.

Disclosure of grand jury materials runs counter to the "long established policy that maintains the secrecy of grand jury proceedings in the federal courts." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424 (1983) (quotations omitted). Nonetheless, such secrecy is not absolute, and the Court may authorize disclosure of grand jury materials "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). To warrant disclosure of grand jury materials under Rule 6(e), Defendant bears the "heavy burden" of demonstrating a "particularized need that outweighs the public's interest in secrecy." *United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1989). To prove particularized need, Defendant must show that "(1) the material [she] seek[s] is needed to avoid a possible injustice in another judicial proceedings, (2) the need for disclosure is greater than the need for continued secrecy, and (3) her request is structured to cover only material so needed." *United States v. Norian Corp.*, 709 F. App'x 138, 142 (3d Cir. 2017) (quoting *Douglas Oil v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)). Where, as here, a defendant alleges government abuse or misconduct relating to the use of the grand jury, the defendant "must offer evidence of a 'substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury'" before the Court proceeds to "balance the need for disclosure against the need for secrecy." *United States v. Eisenberg*, 773 F. Supp. 662, 707 (D.N.J. 1991) (quoting *United States v. Budzanoski*, 462 F.2d 443, 454 (3d Cir. 1972)).

Here, Defendant has failed to both offer evidence of a substantial likelihood of prejudicial irregularities in the conduct of the grand jury or demonstrate a particularized need for the grand jury material. The only "evidence" Defendant proffers is, again, the inference that the timing of the Superseding Indictment necessarily suggests impropriety, and the Government's statement in it's July 1, 2021 letter that it had not located certain witnesses it intended to call at trial. Neither is sufficient.

First, as the Court has already stated, the Government has offered a credible explanation regarding the timing of the Superseding Indictment. Defendant's apparent skepticism of that explanation based on speculative assumptions is insufficient to overcome the presumption of regularity attached to the grand jury proceedings and justify disclosure. *See Giampa*, 904 F. Supp. at 289; *see also United States v. Thompson*, No. 2:17-cr-00094, 2019 WL 102413, at *7 (D.N.J. Jan. 4, 2019) ("In providing such a particularized need, 'mere speculation that such improprieties may have occurred will not suffice to support the required showing.'" (quoting *Budzanoski*, 462 F.2d at 454)); *United States v. Winchester*, 407 F. Supp. 261, 277-78 (D. Del. 1975) ("Assertions based on vague allegations of unspecified 'lawyer's changes' and conjectures concerning temporal probabilities are insufficiently particularized under the Rule to warrant a speculative inquiry into the genesis of an indictment which appears regular on its face.").

Second, the Court finds that the Government's trouble in locating witnesses and the substitution of certain Medicare beneficiary victims does not create the substantial

likelihood of gross or prejudicial irregularities in the grand jury proceedings because, as the Court has already concluded, the Superseding Indictment makes a number of substantive changes from the original Indictment, including the addition of new charges and fraudulent schemes. Moreover, even assuming the Government's apparent inability to locate witnesses did suggest abuse of the grand jury, Defendant's broad request for, among other things, a transcript of the entirety of the grand jury proceedings, copies of all grand jury subpoenas, and all documents received by the government post-indictment is not sufficiently tailored to address that specific concern. The Court will not order what would in effect be a fishing expedition into grand jury materials based on speculative suspicions about the Government's "true motive" in seeking the Superseding Indictment.

Accordingly, Defendant has failed to satisfy her burden that disclosure of the grand jury materials is warranted.

### III. CONCLUSION

For all the reasons set forth above, Defendant's Motion is **DENIED**. An appropriate order follows.

**Date: December 20, 2021**        */s/ William J. Martini*
                                                   **WILLIAM J. MARTINI, U.S.D.J.**