UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. William J. Martini |
| v. | : | Crim. No. 19-678 |
| ALICE CHU | : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION**

The United States respectfully responds to Defendant Alice Chu's motion to reconsider its order and allow Defendant to be released post-conviction without GPS location monitoring, (Dkt. No. 104). Such reconsideration is unwarranted. For the reasons discussed below, Defendant has not established by clear and convincing evidence that she is unlikely to flee while awaiting the imposition and execution of her sentence. Accordingly, the Government respectfully requests that Defendant be detained or, in the alternative, be released with GPS location monitoring, as previously ordered by the Court.

**LEGAL STANDARD**

Pursuant to 18 U.S.C. § 3143(a)(1), the Court "shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained" unless the Court "finds by clear and convincing evidence that the person is not likely to flee . . . if released." Thus, after conviction, the statute creates a presumption of detention pending both sentencing and the execution of the defendant's sentence. The defendant has the burden of overcoming this presumption by establishing by clear and convincing evidence that she will not flee or pose a danger to the safety others. Fed. R. Crim. P. 46(c); *United States v. Strong*, 775 F.2d 504, 505 (3d Cir. 1985) ("Unlike a defendant who has not yet been convicted and for whom

the statute gives a presumption for bail except in certain circumstances, *see* 18 U.S.C. § 3142(b), once a defendant has been convicted, albeit not yet sentenced, the burden shifts to defendant.").

## ARGUMENT

On March 8, 2022, after 6 days of trial, a federal jury found Defendant Chu guilty of conspiracy to commit health care fraud and five counts of health care fraud. After the verdict was announced, the Court ordered Defendant released with GPS location monitoring and travel restricted to New Jersey. Upon Defendant's request, the Court modified its order to allow Defendant to travel to New York, where one of Defendant's adult children resides. The GPS location monitoring ordered did not restrict Defendant's movement in any way—she would be free to leave her home at any time and carry on her day-to-day activities without a curfew or other reporting requirements. The GPS location monitoring merely allowed Pretrial Services to monitor Defendant's location due to Defendant's post-conviction risk of flight.

Less than an hour later, Defendant refused to comply with the Court's order. She did not allow the Pretrial Services Officer to place the GPS location monitoring device on her ankle. Upon returning to Court, Defendant stated, "I'm not going anywhere," and her counsel argued that the GPS location monitoring ordered by the Court was not necessary. The Court permitted Defendant to be released without GPS location monitoring, but required Defendant to have a virtual visit with her psychologist that evening and to return to Court the next day at 12:30 p.m.

**A.      Defendant Refused to Comply with the Court's First Post-Conviction Order**

Defendant's blatant noncompliance with the Court's first order post-conviction shows that she cannot be trusted to appear at future hearings, including sentencing.

Although Defendant argues that she is not a flight risk because she reported as directed while on pretrial release, this argument ignores the reality that all defendants have more incentive

2

to appear prior to trial, when they carry some hope and belief in being acquitted, than to appear after conviction. This is why Congress enacted a presumption of release pending trial and a presumption of detention pending sentence and appeal. *Compare* 18 U.S.C. § 3142, *with id.* § 3143. Here, Defendant's legal status and circumstances have materially changed since her pretrial release. She now stands convicted, and the possible incarceration she faces due to her convictions gives her much more motivation to flee.

Defendant's flagrant refusal to comply with the Court's order of GPS monitoring, just an hour after it was ordered, is the best evidence that Defendant will not comply with future Court orders, including appearance for sentencing.

**B.     Defendant Faces the Possibility of a Lengthy Sentence**

Defendant faces the possibility of a lengthy sentence as a result of her convictions. The statutory maximum term of imprisonment for each of the six counts for which she was convicted is 10 years, thus totaling 60 years. Based on the Government's initial Guidelines calculation, Defendant's Guidelines range may be greater than 10 years based on a base offense level of 6, a loss amount greater than $3,500,000, a loss to a federal health care program greater than $1,000,000, Defendant's use of sophisticated means, a role enhancement, Defendant's abuse of a position of trust, and other enhancements that the Court may find. *See* U.S.S.G. §§ 2B1.1(a)(2), 2B1.1(b)(1)(J); 2B1.1(b)(7); 2B1.1(b)(10); 3B1.1, 3B1.3.

The prospect of a lengthy period of incarceration provides Defendant great incentive to flee.

**C.     Defendant is a Sophisticated Businesswoman Convicted of Multiple Crimes of Deceit Over Multiple Years**

Defendant was convicted of multiple crimes of deceit. Although this was her first conviction, the evidence at trial showed that Defendant was engaged in fraudulent, criminal

activity for more than a decade. Specifically, Defendant defrauded Medicare and other health care benefit programs by billing millions of dollars for expensive infusion medication that she never purchased. This was a sophisticated scheme that involved multiple layers of deceit. Defendant's pattern and history of fraud make it more likely that she will use deceitful tactics to flee.

### D.  Defendant Likely Has Access to Significant Assets that She Could Use to Flee

Despite reporting minimal current assets of less than $15,000, Defendant recently sold, through her sons, two properties for a significant profit.

First, Defendant purchased a condominium at 1512 Palisade Avenue, Unit 9D, on March 20, 2017, for $480,000 cash. The evidence at trial showed that the funds for that property came from Chu's New Life Rheumatology account, which was funded almost entirely by reimbursement from health care benefit programs. The property was put in the name of Chu's son, who did not contribute any equity for the purchase of the condominium. Approximately one year ago, on January 21, 2021, the property was sold for $700,000.

Second, on April 2, 2018, Defendant purchased another condominium at 1512 Palisade Avenue, Unit 9D, for $750,000. Defendant Chu and her other son took a $600,000 mortgage for this purchase, and Chu made a $150,000 down payment for the purchase. Rather than paying the down payment directly, Chu persuaded an associate to write her son a series of checks described as "gifts" so that the money appeared to be from her son, when in reality, Chu funded the sale. *See* Exh. 1 (redacted interview report of Julie Song and related checks). This property was sold on December 28, 2020, for $1,280,000. *See* Exh. 2. Thus, even if the $600,000 mortgage remained at the time of sale, the sale resulted in a $680,000 profit.

4

The Government requested closing documents from Defendant's counsel for both of these properties, but it has not received any. Defendant may claim that the $1,380,000 in cash from these sales after satisfaction of the single $600,000 mortgage went to her sons, despite the fact that they contributed no equity for the initial purchases. Regardless, it is likely that Defendant has access to these funds, even if held by her sons. Defendant could use these funds to flee.

**E.   Defendant's Recent Sale of Real Property Evidences her Lack of Ties to the Community**

Defendant has significantly fewer ties to the community than she did when the Court set her bond conditions in September 2019. *See* Dkt. No. 5 (setting bond conditions). Defendant's counsel represented that Defendant rents her residence and that Defendant now lives alone. Since Defendant's indictment, she has also sold four real properties, two properties discussed above and two commercial properties. Defendant's conviction will also likely result in her suspension from the practice of medicine, further reducing her ties to the community. In short, Defendant has few financial ties to the community and lacks property in the community that could, arguably, be used as collateral to aid in assuring her appearance at sentencing.

**F.   Defendant Has Foreign Ties**

Defendant has foreign ties that make verifiable Court oversight—either in the form of detention or electronic monitoring—appropriate. Although Defendant represented herself to be a citizen only of the United States, she was born in South Korea and has presented no evidence that she forfeited her South Korean citizenship she acquired at birth. Defendant also attended medical school in South Korea from 1983 until 1987. As recently 2018, an entity Defendant controls transferred $50,000 to a South Korean beneficiary. Defendant also made approximately seven international trips in the three years preceding her arrest in September 2019. Furthermore, Defendant has maintained foreign ties since her indictment. For example, Defendant twice sought

5

to return to South Korea. *See* Dkt. Nos. 27, 31.

These significant foreign ties, coupled with Defendant's diminishing ties to the United States and her conviction, further weigh in favor of detaining Defendant or requiring the use of electronic monitoring.

### G.     Other Release Conditions Proposed by Defendant Would Not Assure Her Appearance for Sentencing

The unspecified "combination of conditions other than electronic monitoring" Defendant proposes, *see* Dkt. No. 104 at 3, would not reasonably assure Defendant's presence at sentencing. Defendant's counsel represents that Defendant remains indigent. *Id*. at 1–2. As noted above, she has no assets or property that can be secured. Thus, there are only two ways the Court can maintain oversight of Defendant that do not depend on the veracity of Defendant's representations: detention and electronic monitoring. Defendant's counsel argues that detention is "not a necessary or palatable." *Id*. at 3. Defendant also refused the latter despite the Court's order, and her counsel now argues against it. Defendant bears the burden of showing "by clear and convincing evidence" that Defendant is not likely to flee or that conditions will "reasonably assure the appearance" Defendant's appearance at sentencing. *See* 18 U.S.C. § 3142(a)(1). Defendant's counsel fails to specify conditions that can do that, and he argues against the only conditions that arguably can. Accordingly, there is no basis for reconsidering the Court's original order.

### CONCLUSION

Defendant's refusal to comply with the Court's order does not warrant less supervision of her: it warrants more. The Government respectfully requests that Defendant be detained pending sentencing pursuant to 18 U.S.C. § 3143(a)(1), or, in the alternative, be released with GPS location monitoring, as previously ordered by the Court.

        Respectfully Submitted,

        JOSEPH S. BEEMSTERBOER
        ACTING CHIEF
        CRIMINAL DIVISION, FRAUD SECTION
        U.S. DEPARTMENT OF JUSTICE

        By: *s/ Rebecca Yuan*
        Rebecca Yuan
        Acting Assistant Chief
        Nicholas Peone
        Trial Attorney
        Criminal Division, Fraud Section
        U.S. Department of Justice
        970 Broad Street, Suite 700
        Newark, New Jersey 07102

Dated: March 9, 2022