UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **ALICE CHU** | Criminal No.: 19-cr-0678-WJM <br><br> **OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court on defendant Alice Chu's ("Defendant") motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. ECF No. 111. For the reasons set forth below, Defendant's motion is **DENIED**.

I.     BACKGROUND

Defendant was a medical doctor licensed to practice medicine in the state of New Jersey who owned and operated her own rheumatology medical practice named "New Life Rheumatology Center LLC." Following her arrest in September 2019, Defendant was charged by way of an eight-count superseding indictment (the "Superseding Indictment") on July 23, 2021 with one count of conspiracy to commit health care fraud (Count 1), five substantive counts of health care fraud (Counts 2-6), and two counts of receipt of healthcare kickbacks (Counts 7-8). ECF No. 54. Broadly speaking, with respect to Count 1, the Superseding Indictment alleged that Defendant, along with her office manager, medical assistant and medical biller, Rosa Calvanico, and others conspired to submit or cause the submission of false and fraudulent claims to Medicare and private insurance companies for items and services that were medically unnecessary, ineligible for reimbursement under applicable regulations, or not otherwise provided as represented by Defendant. The substantive counts of health care fraud corresponded to specific instances in which Defendant billed Medicare for allergy immunotherapy treatments that were not medically necessary or actually provided to patients (Counts 2-4) or billed Medicare for the cost of medication – namely, Rituxan – used to treat rheumatoid arthritis without having incurred any cost in acquiring those drugs (Counts 5-6).

At trial, the Government called several witnesses, including some of Defendant's former patients, her former employees, including Calvanico, who was separately charged for her role in the conspiracy and agreed to cooperate with the Government's investigation and prosecution of Defendant, as well as technicians who were employed by an unaffiliated allergy testing company that utilized a portion of Defendant's office space to treat or test patients referred thereto by Defendant. These witnesses variously described the testing and treatments they received, or did not receive, from Defendant, how often certain tests and treatments were ordered or provided to patients, and how claims for such tests and treatments were submitted to Medicare or private insurance companies. In particular,

Calvanico testified, among other things, that she herself was a patient of Defendant and that she assisted Defendant in submitting claims for knee injections that she never actually received at various points between 2010 and 2018. Specifically, Calvanico testified that Defendant would write notes in her chart or patient file falsely indicating that Calvanico needed and was in fact being administered knee injections and that Calvanico would then submit claims to her own insurance providers for the cost of acquiring and administering those injections for payment. Mar. 1, 2022 Tr. at 184:19 – 185:1, 186:21 – 206:8, ECF No. 96.

On March 8, 2022, following a six-day trial, Defendant was found guilty by a jury on Counts 1-6 of the Superseding Indictment for conspiracy to commit health care fraud and health care fraud, and not guilty on Counts 7-8 for receipt of healthcare kickbacks.

Defendant now brings the instant motion seeking a new trial.

## II.   LEGAL STANDARD

Rule 33 of the Federal Rules of Criminal Procedure provides, in relevant part, that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Where, as here, a Rule 33 motion is based on "an alleged error or combination of errors at trial," a new trial will be ordered only when it is "reasonably possible that such error, or combination of errors, substantially influenced the jury's decision." *United States v. Tiangco*, 225 F. Supp. 3d 274, 279 (D.N.J. 2016) (quotations omitted); *see also United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993) ("A new trial is required on [the basis of evidentiary errors] only when the errors, when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial." (cleaned up)).

## III.   DISCUSSION

Defendant's motion for a new trial hinges on her contention that Calvanico's testimony regarding the false claims submitted to insurance companies for her own knee injections which never occurred was inadmissible "other crimes or bad acts" evidence under Rule 404(b) of the Federal Rules of Evidence. In essence, Defendant maintains that because these specific allegations were not charged in the Superseding Indictment as either a manner and means of the charged conspiracy or as a substantive count of health care fraud, the Government was required to provide adequate notice in writing before trial of the use of such evidence and the admissible purpose for which the Government intended to offer it. Because the Government failed to do so, Defendant argues that the evidence was both inadmissible under Rule 404(b) and constituted an unfair surprise such that Defendant was uninformed about the nature of the charges asserted against her and was unable to testify in her own defense as initially planned in violation of the Sixth Amendment to the United States Constitution. The Court disagrees, and finds that Defendant is not entitled to a new trial.

Rule 404(b) of the Federal Rules of Evidence prohibits the use of "[e]vidence of any other crime, wrong or act" to "prove a person's character in order to show that on a

particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Nonetheless, Rule 404(b) does allow for the admission of such "other crime" evidence for other, nonpropensity purposes, such as to prove motive, intent, knowledge, or absence of mistake. Fed. R. Evid. 404(b)(2). Before any such evidence may be admitted, however, Rule 404(b) requires a prosecutor to (1) provide reasonable notice of an intent to use any such evidence; (2) articulate the permissible purpose for which the prosecutor intends to offer such evidence, and the reasoning that supports the articulated purpose; and (3) do so in writing before trial – or in any form during trial if the court, for good cause, excuses lack of pretrial notice. Fed. R. Evid. 404(b)(3).

Importantly, however, neither Rule 404(b)'s exclusionary rule nor its notice requirement applies to evidence that "directly proves" the charged offense. This is because such "intrinsic evidence" is simply not evidence of any "*other* crime, wrong, or act," Fed. R. Evid. 404(b)(1) (emphasis added), but rather "part and parcel of the charged offense," *United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010); *see also United States v. Williams*, 974 F.3d 320, 357 (3d Cir. 2020). To that end, where, as here, the charged offense is a criminal conspiracy, "courts have afforded the prosecution considerable leeway to present evidence, even of unalleged acts within the indictment period, that reflects a conspiratorial agreement or furtherance of the conspiracy's illegal objectives." *Williams*, 974 F.3d at 357 (collecting cases).

Here, though not represented as a standalone substantive count of healthcare fraud, it is clear that Calvanico's testimony regarding the submission of false claims to her insurance provider for knee injections is direct evidence of the existence of the conspiracy to commit healthcare fraud and of Defendant's involvement therein as charged in Count 1 of the Superseding Indictment, which broadly charged Defendant with conspiring with Calvanico and others to commit health care fraud from 2010 through September 2019 for the purpose of "unlawfully enrich[ing] themselves by, among other things, causing the submission of false and fraudulent claims to . . . private insurance companies for items and services that were . . . medically unnecessary, ineligible for reimbursement, and/or not provided as represented." Superseding Indictment at ¶¶ 3-4. Calvanico testified that, to receive extra money from insurance payments, Defendant wrote notes in Calvanico's chart describing knee pain, swelling, and diagnoses of degenerative joint disease and osteoarthritis as well as treatment for these conditions consisting of routine knee injections and draining fluid from Calvanico's knees. *See* Mar. 1, 2022 Tr. at 184:19 – 185:1, 186:21 – 206:8. Calvanico further testified that Defendant signed her medical charts and files containing these notes, and instructed Calvanico to submit claims to her insurance for reimbursement for the various knee injections despite never actually providing these treatments. *See id.* at 186:21-24, 187:12-21, 188:21 – 189:7, 194:2-6. Indeed, the conduct at issue involved the only two people directly named in the Superseding Indictment, Defendant and Calvanico, and took place during the years covered by Count 1 of the Superseding Indictment. Moreover, though the fabricated knee injections are not themselves specifically described as a manner and means of carrying out the charged conspiracy, they do fall comfortably within the Superseding Indictment's allegation that

3

"[i]t was further part of the conspiracy that [Defendant], Rosa Calvanico, and others falsified, fabricated, altered, and caused the falsification, fabrication, and alteration of records, including patient medical files . . . all to support claims for . . . injections . . . and other items and services that were . . . medically unnecessary, ineligible for reimbursement, and/or not provided as represented." Superseding Indictment at ¶ 5(j).

Because Calvanico's testimony regarding the submission of false claims to her insurance providers for knee injections she never received was direct, intrinsic evidence of the conspiracy alleged in Count 1 of the Superseding Indictment, Rule 404(b), including its notice provisions, do not apply. Accordingly, it was not error to permit Calvanico's testimony without advance notice.

Finally, Defendant's claim of unfair surprise such that she had to abandon her initial plan to testify in her own defense is unpersuasive. The Government notes that, in interviews with agents of the Federal Bureau of Investigation (the "FBI"), Calvanico apparently disclosed that she had been one of Defendant's patients but denied ever receiving knee injections. Calvanico also admitted that she was aware about the claims submitted to her insurance provider for those knee injections she never received, and that Defendant asked her to submit these false claims whenever she needed money. The Government states, and Defendant does not dispute, that the reports of Calvanico's interviews with the FBI were produced to Defendant on June 2, 2021 and August 4, 2021, and that the Government had identified both the physical and electronic copies of Calvanico's patient file and progress notes as exhibits the Government intended to offer at trial on September 14, 2021 and December 13, 2021. In other words, Defendant had the FBI interview reports and notice from the Government regarding its intent to offer Calvanico's patient files and progress notes into evidence at trial months in advance. Defendant has not provided any sort of explanation as to why these disclosures were insufficient to allow for the preparation of a defense.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion for a new trial is **DENIED**. An appropriate order follows.

Date: June 28, 2022

/s/ *William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**